IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02691-REB-MEH

TYRONE MCDANIEL, a/k/a Tyrone V. Daniels,

Plaintiff,

v.

GERRY N. OYEN, Sheriff, Bent County Jail, Las Animas, and
KAREN DONKLE, Nurse,

Defendants.

---

**RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court are Defendants' Motion for Summary Judgment [filed March 5, 2009; docket #83] and Plaintiff's Motion for Summary Judgement [sic] [filed April 15, 2009; docket #105]. The matters are briefed and referred to this Court for recommendation [dockets #84, 106]. Oral argument would not materially assist the Court in adjudicating these motions. For the reasons stated below, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgement [sic] be **DENIED**.[1]

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by

## I. Background

Plaintiff commenced this action pursuant to Section 1983 of 42 U.S.C. on December 27, 2007. (Docket #3.) To briefly summarize Plaintiff's Complaint, Plaintiff claims Defendants violated the Eighth Amendment prohibition of cruel and unusual punishment through their deliberate indifference to Plaintiff's medical needs by failing to provide timely or appropriate medical attention after Plaintiff slipped and fell while showering in Bent County Jail where he was an inmate, "hitting the lower right side of [his] back on the corner of the sink."[2] (*Id*. at 3.) Plaintiff alleges he fell in the shower at approximately 8:30 p.m. on October 19, 2007. (*Id*.) Plaintiff states he did not receive medical attention, even though he requested medical attention, until the evening of October 23, 2007, by Defendant Donkle who was Plaintiff's treating nurse at Bent County Jail, after Plaintiff submitted a medical request form. (*Id*. at 3-4.) Plaintiff describes how Nurse Donkle evaluated Plaintiff, diagnosed a back spasm, and prescribed a muscle relaxer. Plaintiff states he was also prescribed "vicadin" for pain on October 29, 2007, then "percaset" on November 14, 2007. (*Id*. at 4.) Plaintiff asserts the jail denied his requests to see a neurologist and to get an MRI, and that an X-ray "wasn't done til 25 days after the injury, meaning; there could've been broken bones, internal bleeding, punctured organs. . . ." (*Id*. at 4-5.) Specifically, the Court infers the following three primary allegations by Plaintiff: 1) Defendant Nurse Donkle violated Plaintiff's Eighth Amendment rights by acting deliberately indifferent to Plaintiff's serious medical need; 2) "Control" had official

---

the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]Plaintiff identifies only Section 1983 as a basis for jurisdiction in this matter. Consistent with its obligations to liberally construe *pro se* pleadings, the Court infers Plaintiff brings an Eighth Amendment claim due to his use of the term "deliberate indifference."

notice and knowledge of Plaintiff's medical needs yet also failed to act; and 3) Defendant Sheriff Oyen, Sheriff at Bent County Jail, failed to respond reasonably to Plaintiff's medical needs and failed to provide adequate treatment.

Defendants filed their Motion for Summary Judgment on March 5, 2009. (Docket #83.) In support of their Motion, Defendants submit Plaintiff's Inmate Medical Request dated October 20, 2007, an affidavit of Defendant Donkle regarding her treatment of Plaintiff at Bent County Jail, the summary of the diagnosis of Plaintiff's injury made by the Arkansas Valley Regional Medical Center on November 13, 2007, and the Bent County Jail inmate notes for Plaintiff dated from September 28, 2007 to January 11, 2008. (*See* dockets #83-2, 83-3, 83-4, 83-5.) Defendants contend Plaintiff received appropriate and timely care for his asserted injury, and both Defendant Donkle and Defendant Oyen lack the requisite state of mind to have violated Plaintiff's Eighth Amendment rights in the manner alleged.

In response, Plaintiff reiterates the facts and allegations as stated in his Complaint. Plaintiff emphasizes his perspective that "defendants and staffs [sic] 'fail to act', 'fail to protect', and 'fail to provide' medical care." (Docket #104 at 2.) Plaintiff further contends Defendant Oyen acted deliberately indifferent to Plaintiff's safety and health through the "failure to train, to act or protect." (*Id*.) Plaintiff's opinion that "emergency procedures" should have been implemented at the time of his injury constitutes the crux of his argument. (*Id*. at 3.) Plaintiff includes three exhibits with his response: the Bent County Sheriff's Office mission statement and medical services policy, the Bent County Sheriff's Office/Jail Division description of "Special Health Care Programs," and the Bent County Sheriff's Office/Jail Division description of "Medical Services." (*Id*. at 9-17.)

Plaintiff contemporaneously filed his Motion for Summary Judgment with his response. In his Motion, Plaintiff alleges he sustained an over 50% loss of mobility due to the back injury. (Docket #105 at 3.) Plaintiff contends Defendant Donkle erroneously relied upon "X-Rays" to do nothing but "medicate the injury," and in fact, Plaintiff developed a "nasty spinal injury that was hidden from X-rays but not from M.R.I." (*Id.*) Moreover, Plaintiff infers responsibility of Sheriff Oyen for the negligence of "control" in not following emergency procedures. (*Id.*) Plaintiff further asserts that the jail provided appropriate care for "mexican inmates that was similar [sic] situated and disregarded" Plaintiff's injury, indicating a discriminatory practice based on race, as Plaintiff describes himself as "afro american." (*Id*. at 5; *see also* docket #3 at 3.) Plaintiff also alludes to liability of Bent County for failing to properly train jail staff, amounting to "gross negligence" or "deliberate indifference." (*Id.*)

In response to Plaintiff's Motion and as a reply in support of their Motion, Defendants again present their argument that Plaintiff was provided appropriate and timely medical treatment. (Docket #107 at 1.) Defendants also point out that Plaintiff's proffered evidence regarding the seriousness of his injuries, namely the MRI report, is dated June 2008 and fails to articulate a causal link between the results of the MRI and the occurrence at Bent County Jail in October 2007. (*Id.* at 2.) To counter Plaintiff's assertions that Defendant Donkle lacked the qualifications to appropriately diagnose him, Defendants state Plaintiff failed to provide any evidence refuting Defendant Donkle's qualifications as a nurse, and, in turn, any evidence that Defendant Oyen failed to staff the jail with proper medical staff. (*Id*. at 2-3.) Defendants further contend that Plaintiff's claim of unequal medical treatment based on his race fails as a matter of law, because Plaintiff fails to present evidence of specific facts demonstrating a discriminatory purpose in the acts of

Defendants. (*Id*. at 4.)

Plaintiff submitted a reply in support of his Motion, repeating his contentions that "he suffered a serious spinal injury, and defendants failed to treat his injury as a medical emergency under the policies of the Bent County Jail." (Docket #109 at 2.) Plaintiff rebuts Defendants' allegation regarding lack of a causal link between the June 2008 MRI and the back injury, stating that both the X-ray report dated November 14, 2007, and the MRI report identify the location of the spinal injuries at L4-5 and L5-S1. (*Id*. at 3 (citing docket #105 at 17-18).) Additionally, Plaintiff asserts that because he was injured and the two other "Mexican" inmates were injured, they were similarly situated and thus, Plaintiff endured discriminatory treatment because the "Mexican" inmates were immediately taken to the hospital and Plaintiff was not. (*Id*. at 4-5.)

## II. Facts

In their Motion for Summary Judgment, Defendants offer the following recitation of undisputed material facts:

Plaintiff Tyrone McDaniel was incarcerated at the Bent County Jail at all times relevant to this case. (Docket #3 at 3.) On October 20, 2007, Plaintiff notified jail staff that he was experiencing back pain from a fall he had in the shower the previous day. (Docket #83-2 at 2.) Plaintiff's request for medical attention was forwarded to Nurse Practitioner Karen Donkle, and Plaintiff was provided over-the-counter pain medication by jail staff. (Docket #83-3 at ¶¶ 3, 7.) On October 22, 2007, Nurse Donkle conducted a medical examination of the Plaintiff at the Bent County Jail. Plaintiff was sitting at a table talking with other inmates. As he stood he appeared to have slight discomfort. He walked with a slight limp on the right side. The rubber slippers he was wearing were not supporting his right foot, and his foot was hanging over the slipper. (*Id*. at ¶ 4.)

As Plaintiff sat down on the table across from Nurse Donkle, he did not appear to be in extreme pain. He told Nurse Donkle that he needed to go to the hospital because he knew his back was really hurt. (*Id*. at ¶ 6.) Nurse Donkle proceeded to examine Plaintiff in a head-to-toe fashion to assess the major systems related to his complaint. Plaintiff was able to move his upper and lower extremities without difficulty in various positions. His strength was equal, and at maximum when checked by providing resistance as he raised and lowered his arms and legs. He did have slight discomfort in performing a straight leg raise at about 60 degrees, but Nurse Donkle did not observe any facial grimacing. (*Id*. at ¶ 8.) Nurse Donkle diagnosed Plaintiff as suffering from a back spasm at level T-11 to L4, left of his spine, with no referred pain to his lower limbs. He was prescribed 800 mg of ibuprofen three times a day for pain, and a muscle relaxant for treatment of his back spasm. Plaintiff was also given athletic shoes without shoestrings to wear at the jail to provide him with better support. (*Id*. at ¶ 9.) Plaintiff was seen approximately three more times after the first medical examination, to address his requests for stronger pain medication. Due to the subjective nature of Plaintiff's pain, Nurse Donkle changed Plaintiff's pain medication from ibuprofen to vicodin, and then to percocet. (*Id*. at ¶ 10.) Based on Plaintiff's continued complaints of pain, Plaintiff was transported to the Arkansas Valley Regional Medical Center on November 13, 2007, where an x-ray was taken of his back. (*Id*. at ¶ 11.) The radiologist's impression found possible musculoskeletal spasm, with mild degenerative changes in the lower lumbar spine. (Docket #83-4 at 2.) Plaintiff was transported to the custody of the Colorado Department of Corrections ("CDOC") on January 11, 2008. (Docket #83-5 at 2.)

In his Motion for Summary Judgment, Plaintiff indicates his agreement with Defendants' statement of facts, with a few notable additions as paraphrased by the Court:

Plaintiff requested professional medical care by a physician on October 20, 21, 23, 25, 2007, and November 10, 11, 2007. (Docket #105 at 11-16.) Affidavits provided by other inmates included with Plaintiff's Complaint demonstrate their perspective regarding Plaintiff's inability to get out of bed at and around the date of his fall in the shower room due to his injured back. (*Id*. at 4 (citing docket #3 at 28-34).) On June 2, 2008, the Colorado Department of Human Services determined Plaintiff to be "disabled to the extent [he is] unable to work at any job for a total period of six or more months" due to a "lower back injury, problem with left leg." (*Id*. at 7.) The MRI report dated June 20, 2008, indicates a small disk herniation at L5-S1 and degenerative changes at L4-5. (*Id*. at 18.)

## III. Discussion

### *A. Summary Judgment under Fed. R. Civ. P. 56*

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary

judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

***B. Review of a Pro Se Plaintiff's Complaint***

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). The Tenth Circuit determined a prisoner is "merely required to provide 'a short and plain statement' of his Eighth Amendment claims, and 'malice, intent, knowledge, and other condition of mind of a person may be averred generally' in the complaint." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006)).

***C. Section 1983 Affirmative Link Requirement***

In a Section 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Complaint. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)). In order for a prison official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, No. 99-1335, 2000 WL 84893, at *2 (10th Cir. Jan. 27, 2000). "Supervisors are only liable under § 1983 for their own culpable involvement" in the alleged violation, because government officials may not be held vicariously liable for the misconduct of their subordinates under Section 1983. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

***D. Deliberate Indifference***

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura*, 461 F.3d at 1291). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate

it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair*, 227 F. App'x at 776 (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

## IV. Analysis

Plaintiff sues Nurse Donkle, his treating nurse during his time at Bent County Jail, and Sheriff Oyen, the Sheriff of Bent County Jail. The Court addresses Plaintiff's claims against each Defendant, as well as Plaintiff's equal protection claim, in turn.

### *A. Defendant Nurse Donkle*

Plaintiff must demonstrate he suffered a sufficiently serious medical need to implicate the protections of the Eighth Amendment, in satisfaction of the first objective prong of the "deliberate indifference" evaluation. As stated, the Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"

*Horton*, 123 F. App'x at 371 (citation omitted). Pursuant to the reports relied upon by both Plaintiff and Defendants indicating continuing medical treatment and pain management related to Plaintiff's back injury, the Court concludes Plaintiff's back injury is indeed sufficiently serious to satisfy the first prong of the "deliberate indifference" evaluation.

In order to fully demonstrate deliberate indifference, Plaintiff must also prove the subjective prong of the evaluation. Plaintiff must show Defendant Donkle "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). Plaintiff must establish Defendant Donkle "deliberate[ly] refus[ed] to provide medical attention, as opposed to a particular course of treatment." *Fleming v. Uphoff*, 210 F.3d 289, 2000 WL 374295, at *2 (10th Cir. Apr. 12, 2000) (quoting *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Contrary to Plaintiff's conclusive assertions, Defendant Donkle's affidavit, the medical requests submitted by Plaintiff, and Plaintiff's own recitation of the alleged facts in this matter indicate Defendant Donkle indeed provided medical attention within her discretion as a jail nurse. Plaintiff contends Defendant Donkle violated his Eighth Amendment rights by misdiagnosing his injury and not providing treatment he deems was appropriate. However, the record demonstrates Defendant Donkle provided medical treatment to Plaintiff on October 22 and 29, and November 6, 10, and 20, 2007, all at Plaintiff's request. (Docket #105 at 11, 14-15, 26-27.) The notes on these reports indicate Defendant Donkle, after having diagnosed Plaintiff with a back spasm, prescribed pain medication including vicodin and percoset as Plaintiff complained about worsening pain. Defendant Donkle also recommended the jail staff to allow Plaintiff to wear his tennis shoes (without laces) and recommended he use crutches. (*Id*. at 11, 13.) As Plaintiff continued to complain about the pain, Defendant Donkle

referred Plaintiff to the Arkansas Valley Regional Medical Center for an X-ray, which confirmed the possibility of "musculoskeletal spasm." (*Id*. at 17.)

Importantly, a prisoner's difference of opinion with the prison's medical staff does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (stating "a difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983"). The Tenth Circuit determined "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan*, 471 F.3d at 1160 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). *See also Worrell v. Bruce*, 296 F. App'x 665, 670 (10th Cir. 2008) (holding the same for decision of a prison nurse). Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Id*. (quoting *Estelle*, 429 U.S. at 107). *See also Florence v. Rios*, No. 07-cv-00380-REB-KLM, 2008 WL 538677 at *7 (D. Colo. Feb. 25, 2008) ("no constitutional claim is stated where a prisoner challenges only matters of medical judgment . . ." (citing *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992))). Plaintiff's claims against Defendant Donkle amount to no more than his disagreement with her diagnoses and treatment of his injury and thus, are outside of the Eighth Amendment's scope.

In his briefing, Plaintiff repeats his perception that an MRI was necessary to properly evaluate his injury, beyond what Defendant Donkle prescribed. However, the Supreme Court concluded "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at

107. Such difference of opinion may amount to medical malpractice which is not actionable under Section 1983. *Braxton v. Wyandotte County Sheriff's Dep't*, 206 F. App'x 791, 793 (10th Cir. 2006) (citing *Kikumura*, 461 F.3d at 1291). Additionally, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "A misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006).

Furthermore, the record demonstrates no delay by Defendant Donkle in providing care for Plaintiff. The first medical request submitted by Plaintiff on October 20, 2007, indicates the request was "forwarded to Nurse Donkle" on October 22, 2007, and Defendant Donkle's notes written on the request regarding Plaintiff's treatment are dated the same date the request was forwarded, on October 22, 2007. (Docket #105 at 11.) The evidence submitted by both parties represent Defendant Donkle's diligence in diagnosing Plaintiff's medical needs and prescribing treatment within her discretion as medical personnel, on every occasion that Plaintiff submitted a request for medical attention. Accordingly, the Court finds Plaintiff fails to establish the requisite subjective second prong of the "deliberate indifference" evaluation. Therefore, the Court recommends finding that Plaintiff has failed to state a viable constitutional claim and to demonstrate any factual issues for trial regarding his claim against Defendant Donkle.

***B. Defendant Sheriff Oyen***

As stated, in order for a prison (or jail) official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins*, 2000 WL 84893, at *2. "Supervisors are only

liable under § 1983 for their own culpable involvement" in the alleged violation, because government officials may not be held vicariously liable for the misconduct of their subordinates under Section 1983. *Serna*, 455 F.3d at 1151. Thus, Plaintiff must also prove the subjective prong of the "deliberate indifference" test with regards to Defendant Oyen, demonstrating Defendant Oyen "knew [Plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). In *Farmer*, the Supreme Court concluded that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. . . . prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." 511 U.S. at 844-45. Plaintiff alleges Sheriff Oyen failed to respond reasonably to Plaintiff's medical needs and failed to provide adequate treatment, thereby violating Plaintiff's constitutional rights under the Eighth Amendment.

The record indicates Defendant Oyen knew about Plaintiff's accident and subsequent injury. On October 21, 2007, Plaintiff submitted an Inmate Communication Form to Sheriff Oyen stating his rendition of the facts of the accident, that jail staff provided him with "back medication," that he could "barely walk," and that he requests medical treatment by an outside facility and an x-ray. (Docket #105 at 12.) The deputy who received Plaintiff's communication signed the communication indicating its receipt on October 22, 2007. Defendant Oyen also signed the communication, indicating his receipt of the document, on October 22, 2007, which is also the date Defendant Donkle first provided medical care to Plaintiff. (*Id*.) Plaintiff submitted another Inmate Communication Form to Sheriff Oyen dated as received on November 13, 2007, and indicated as "forwarded to Sheriff Oyen" on November 16, 2007. (Docket #105 at 16.) In this communication, Plaintiff describes how on November 10, 2007, he witnessed another inmate get taken to the hospital

to receive "8 stitches on his right thumb." Based on this incident, Plaintiff asserts he was discriminated against, and medical attention is given in the jail based on race. (*Id*.) Notes on this communication indicate that an X-ray was "done" for Plaintiff on November 13, 2007, and that "bleeding wounds require immediate attention." (*Id*.) Defendant Oyen signed this communication indicating his review on November 26, 2007. (*Id*.) In a letter dated November 2, 2007, Defendant Oyen wrote to Plaintiff regarding his "medical request," and indicated the actions taken by the Sheriff to accommodate Plaintiff's requests and communications. (Docket #105 at 22.) Defendant Oyen stated that Plaintiff reported "pre-existing back and left leg problems when booked in to [sic] [the] facility on September 28, 2007." (*Id*.) Defendant Oyen also described how the facility was in the process of retrieving Plaintiff's medical records from the Department of Corrections to "determine prior treatment and other problems that may be pre-existing." (*Id*.) To conclude the letter, Defendant Oyen recognized that Plaintiff was taking medication for pain management at that time and encouraged Plaintiff to "please continue to visit with staff in regards to [his] needs." (*Id*.)

The Court believes the record demonstrates Defendant Oyen acted reasonably in this matter. Defendant Oyen's signatures on the Inmate Communications indicate his awareness that Plaintiff was receiving appropriate care by Defendant Donkle. Defendant Oyen's letter to Plaintiff recognized Plaintiff's ongoing needs and reinforced Plaintiff's access to medical care available to him at Bent County Jail. The Court considers Defendant Oyen's responses to the communications received from Plaintiff to be proper and reasonable under the circumstances, in light of his supervisory role over the Bent County Jail. Moreover, the Supreme Court determined that "'deliberate indifference' is a stringent standard of fault," and "[a] showing of simple or even heightened negligence will not suffice." *Board of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997). Even when drawing all inferences in the light most favorable to

Plaintiff regarding this issue, the Court finds Plaintiff fails to provide evidence establishing a genuine issue of material fact regarding whether Defendant Oyen's conduct rose to the level of fault required for deliberate indifference. Therefore, the Court recommends finding that Plaintiff has failed to state a viable constitutional claim and to demonstrate any factual issues for trial regarding this claim against Defendant Oyen.

***C. Plaintiff's Equal Protection Allegations***

Plaintiff complains that the jail provided appropriate care for "mexican inmates that was similar [sic] situated and disregarded" Plaintiff's injury, indicating a discriminatory practice based on race, as Plaintiff describes himself as "afro american." (Docket #104 at 5; *see also* docket #3 at 3.) Plaintiff states that "'inmate T.Garcia and Deherrera' one had [sic] a sprain thumb injury and the other had got his thumb cut by horseplaying." (Docket #104 at 4.) Plaintiff alleges that because these inmates were taken to the "observation tank" then "transported to the Arkansas Valley Research Medical Center," and Plaintiff's complaints were "just ignored," jail staff discriminated against Plaintiff based on race. (*Id*.; *see also* docket #105 at 16.) In support of this contention, one of Plaintiff's Inmate Communication Form documents to Sheriff Oyen dated as received by jail staff on November 13, 2007, describes how on November 10, 2007, Plaintiff witnessed inmate "Mr. DeHerrera" get taken to the hospital to receive "8 stitches on his right thumb." (Docket #105 at 16.) Notes on this communication indicate that an X-ray was "done" for Plaintiff on November 13, 2007, and that "bleeding wounds require immediate attention." (*Id*.)

The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. The Tenth Circuit articulated that "an equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod*, 94 at 1406 (citing *City of Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439 (1985)). "To survive summary judgment, the plaintiff must go beyond [his] pleadings and show that [he] has evidence of specific facts that demonstrate it is the policy or custom of the defendants" to provide medical care to "Mexican" inmates and ignore that of "afro american" inmates. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Plaintiff "must also provide evidence that discrimination was a motivating factor for the defendants and that [he] was injured by operation of the policy or custom." *Id*.

Plaintiff's equal protection claim fails on its face. Plaintiff alleges inmates with thumb injuries were treated differently than Plaintiff's back injury, and Plaintiff's own communication to the jail describes different circumstances giving rise to such injuries. Prison officials retain "broad administrative and discretionary authority to manage and control the prison institution." *Penrod*, 94 F.3d at 1405 (citing *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987)). As noted on the Inmate Communication Form, "bleeding wounds require immediate attention;" Plaintiff's injury, as he describes it, did not include "bleeding wounds." (*See* docket #105 at 16.) Moreover, as concluded in the previous sections, Defendant Donkle did not "ignore" Plaintiff, nor did Defendant Oyen. In the context of a Section 1983 action, both named Defendants acted lawfully within their discretion as a jail nurse and as Sheriff, respectively. Plaintiff fails to provide any evidence, other than the conclusive allegations in his pleadings, demonstrating it is the policy or custom of the defendants to provide racially-motivated discriminatory medical care, and that such discrimination was a motivating factor in his case. Thus, the Court recommends finding that Plaintiff has failed to state a viable equal protection claim and to demonstrate any factual issues for trial regarding this claim against Defendants Donkle and Oyen.

## V. Conclusion

Accordingly, for the reasons stated above, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment [filed March 5, 2009; docket #83] be **GRANTED**; Plaintiff's Motion for Summary Judgement [sic] [filed April 15, 2009; docket #105] be **DENIED**; and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**; and

It is hereby **ORDERED** that the Final Pretrial Conference set for Thursday, May 28, 2009, at 9:15 a.m. is hereby **VACATED**, pending the District Court's decision on this recommendation.

Dated at Denver, Colorado, this 15th day of May, 2009.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge